UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


WEEDMAN RANCHES, INC., an
Oregon corporation,

        Plaintiff,

     v.                                                Civil No. 08-1090-HA

DEERE & COMPANY, a Delaware           OPINION AND ORDER
corporation,

        Defendant.
_____

HAGGERTY, District Judge:

       Plaintiff Weedman Ranches, Inc. (plaintiff), filed suit against defendant Deere and Company (Deere or defendant) asserting products liability and breach of express warranty claims. Defendant filed a Motion for Summary Judgment [15]. Oral argument was held on October 16, 2009. For the following reasons, defendant's Motion for Summary Judgment is denied in part and granted in part.

1 - OPINION AND ORDER

**BACKGROUND**

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff.

On or about June 27, 2006, plaintiff purchased a used 2005 Deere model STS 9760 combine from RDO Equipment in Wasco, Oregon. At the time of purchase, the combine had been operated for 295 hours by the only prior owner during the 2005 harvest. This constitutes light to average use for one season. After purchase, plaintiff operated the combine for an additional fifty-five hours during five days of use. Prior to using the combine each morning, plaintiff used an air hose to clear wheat "chaff" from various parts of the combine, including the "straw chopper" and engine compartment. Aside from "chroming the concave," plaintiff made no modifications to the combine, and plaintiff is aware of no changes made by the previous owner. Deere's manufacturer warranty for the combine expired on June 22, 2009.

On July 25, 2006, Erin Weedman was operating the combine when Weedman employee Bruce Smith, who was following the combine in a pickup truck, noticed white smoke emanating from the engine. Bruce Smith radioed Erin Weedman, who immediately exited the combine with a fire extinguisher. Erin Weedman attempted to extinguish the flames coming from the engine compartment, but the fire spread quickly and consumed the combine. No warning lights inside the combine indicated that there were problems with the combine, and the combine had been operating normally.

Following the destruction of the combine, Weedman purchased a new 2006 Deere model STS 9760. During the remainder of the 2006 harvest, Weedman personnel noted at least twelve small fires on the replacement combine but were able to extinguish those fires before they spread, in part because they installed a closed circuit camera trained on the engine compartment.

2 - OPINION AND ORDER

Plaintiff believes that the fire on the first combine was caused by electrostatic discharge (ESD) resulting from a design defect in the Deere STS 9760 combine. Plaintiff seeks to recover damages for the value of the destroyed combine, the diesel fuel in the combine, and the tools and upgrades installed on the combine.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-49.

## DISCUSSION

Defendant moves for summary judgment and seeks to exclude evidence offered by plaintiff in opposition to the motion.

**I.  Motion for Summary Judgment**

Defendant moves for summary judgment on three grounds: (1) that plaintiff is

3  - OPINION AND ORDER

precluded from collecting damages for destruction of the combine itself pursuant to the economic loss doctrine; (2) that plaintiff's express warranty claim must fail because there was no warranty; (3) and that plaintiff has failed to offer evidence of a product defect.  Because of ongoing fact and expert discovery, this court ruled that defendant's third argument is not yet ripe and is holding that portion of defendant's Motion in abeyance until the completion of expert discovery.

(1)     Economic Loss Doctrine:

Defendant asserts that the economic loss doctrine bars plaintiff's product liability claim. Oregon Revised Statute (ORS) 30.920(1) provides that "[o]ne who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is *subject to liability for physical harm or damage to property caused by that condition*." (emphasis added).  Under ORS 30.920, defendant argues that plaintiff is limited to seeking damages to property other than the product itself, and as such, may not recover for damage to the combine, its integrated parts, the loss of fuel, or any other *de minimis* property damage.

Plaintiff contends that under Oregon product liability law, damage to the product itself is recoverable where the product's defect is "man-endangering." *Russell v. Ford Motor Co.*, 575 P.2d 1383, 1387 (Or. 1978).  In *Russell*, the plaintiff was driving a pickup truck with a defective axle and crashed, damaging the truck, but leaving the plaintiff uninjured.  The Oregon Supreme Court held that the plaintiff could recover for damage to the truck itself because the defect was "man-endangering." *Id*.  The court drew a distinction between "the disappointed users . . . and the endangered ones," reasoning that there should be "strict liability for marketing the dangerously defective product." *Id*. at 1386.  Whether a plaintiff is injured by the dangerous

4  - OPINION AND ORDER

defect is irrelevant because liability is created when an unsafe product is sold, and liability "cannot depend on the fortuitous extent of the damage done when the danger created by the defect subsequently comes to pass." *Id.* at 1387.

Defendant argues that *Russell* is inapposite to this case as *Russell* was decided in 1978, and ORS 30.920 was enacted in 1979. Additionally, the United States Supreme Court has addressed *Russell* and rejected its reasoning. *See East River S.S. Corp. v. Transamerica Delava, Inc.*, 476 U.S. 858, 869-70 (1986)(holding that in admiralty law, there is no liability when a party alleges injury only to the product itself resulting in purely economic loss).

Notwithstanding the Supreme Court's treatment of *Russell*, the Oregon legislature did not reject the decision through the enactment of ORS 30.920. ORS 30.920(3) states that "it is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965)." Section 402A(1) establishes strict liability for "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." The decision in *Russell* was based in part on section 402A. 575 P.2d at 1386 n.5 ("Section 402A of the Restatement of Torts 2d, the source most cited in Oregon cases . . . would extend strict liability for product defects unreasonably dangerous to property as well as persons." (citations omitted)). Accordingly, there is little reason to believe that ORS 30.920 overturned the holding in *Russell*.

Defendant relies heavily upon *Russell v. Deere & Co.*, 61 P.3d 955 (Or. Ct. App. 2003), in support of its argument. In *Deere & Co.*, a combine allegedly failed to separate, collect, and store seed from a variety of grains, which resulted in the loss of grain. *Id*. at 957. The plaintiff asserted claims based on a product liability theory and the Oregon Court of Appeals rejected

5 - OPINION AND ORDER

those claims because the alleged defect was not "unreasonably dangerous" and therefore did not fall under ORS 30.920.  The court held that "[a] defective product presents an unreasonable danger when it is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'"  *Id*. at 958.  Moreover, "[a] defective product is not unreasonably dangerous, however, if it poses a risk only to itself."  *Id*.

Defendant's reliance on *Deere & Co.*, is misplaced as the facts in that case did not deal with a situation in which the defective combine was arguably "man-endangering."  In this case, the combine arguably posed a risk both to itself, and to the operator of the combine.

Moreover, Oregon courts have examined *Russell* following the enactment of ORS 30.920 and have discussed it favorably.  In *City of Medford By and Through Medford Water Comm'n v. Budge-McHugh Supply Co.*, the city brought a products liability action against a water pipe manufacturer for economic and property damage sustained from an underground broken pipe. 754 P.2d 607 (Or. Ct. App. 1988) *abrogated on other grounds by Shasta View Irrigation Dist. v. Amoco Chem. Corp.*, 986 P.2d 536, 540 (Or. 1999).  The trial court dismissed the city's strict liability claims because the damages alleged were not the result of a dangerously defective product.  Relying on *Russell*, the Oregon Court of Appeals held that "[a]lthough plaintiff's complaint alleges the conclusion of a threat to personal safety, it does not state any facts which, if proved, would permit an inference of an unreasonable danger to people or property."  *Id*. at 611.  Therefore, "the allegations make plaintiff out as a disappointed user, not an endangered one," and the"trial court did not err in dismissing the strict liability claim."  *Id*.

In *Gladhart v. Oregon Vineyard Supply Co.*, the Oregon Court of Appeals discussed the holding in *Russell* extensively and never intimated that it was no longer good law.  994 P.2d 134,

6  - OPINION AND ORDER

141-143 (Or. Ct. App. 1999) *reversed on other grounds by* 26 P.3d 817 (Or. 2001).  Instead the court noted that since the enactment of ORS 30.920, in order for strict liability to apply under *Russell*, "the defect in the product must threaten person safety."  *Id*. at 142;  *see also Erickson Air-Crane Co. v. United Technologies Corp*., 720 P.2d 389, 390 (Or. Ct. App.1986) *reversed on other grounds by* 735 P.2d 614 (Or. 1987) ("It does not matter that the only 'property damage' for which recovery is sought is the destruction of the product itself"); *Becker v. Barbur Blvd. Equipment Rentals, Inc.*, 726 P.2d 967, 971-972 (Or. Ct. App. 1986).

The discussion in the cases cited above makes clear that the rule announced in *Russell* remains good law.  The alleged defect in the Deere STS 9760 combine, if supported with admissible evidence, raises factual issues that should go to a jury on the question of whether it was "unreasonably dangerous" or "man-endangering."  Accordingly, the economic loss doctrine does not bar plaintiff's products liability claim.

(2)    Express Warranty Claim:

Plaintiff's second claim is for the "breach of express warranty."  Plaintiff now concedes that there was no express warranty for the subject combine.  Plaintiff's second claim is dismissed.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment [15] is DENIED IN PART as to plaintiff's first claim and GRANTED as to plaintiff's second claim.

IT IS SO ORDERED.

DATED this  21   day of October, 2009.

                                                 /s/ Ancer L. Haggerty   
                                                 Ancer L. Haggerty  
                                         United States District Judge